**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

RODNEY JOE FILLMORE,    )
               )
      Plaintiff,   )
               )
v.             )   Case No. 09-4102-KGS
               )
CITY OF OSAGE CITY, KANSAS  )
*a Municipal Corporation*, et al.,  )
               )
      Defendants.  )

## MEMORANDUM AND ORDER

This matter comes before the court upon the parties' cross-motions for summary judgment and upon defendants' motion to strike plaintiff's affidavit. Plaintiff Rodney Joe Fillmore brings this civil rights action against defendants Osage City, Officer Larry J. Phillips, and Detective Robert T. Dunham stemming from an incident in which Osage City law enforcement officers stopped plaintiff's vehicle and subsequently arrested him. The court previously dismissed plaintiff's claims against April and Larry Thompson. Plaintiff asserts 42 U.S.C. § 1983 claims against Officer Phillips and Detective Dunham in their individual capacities for unreasonable seizure and arrest in violation of the Fourth Amendment and Fourteenth Amendment. He also asserts a Kansas state law claim against the defendant law enforcement officers and against Osage City for unlawful arrest. For the reasons explained below, both summary judgment motions are denied, and defendants' motion to strike is also denied.

I.  **Legal Standard Governing Summary Judgment Motions**

Summary judgment is appropriate if the moving party demonstrates "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  A

"genuine dispute" exists if "there is sufficient evidence on each side so that a rational trier of fact

could resolve the issue either way."[2]  A fact is "material" only if it "might affect the outcome of

the suit under the governing law."[3]  The court views the evidence and all reasonable inferences

drawn from the evidence in the light most favorable to the nonmoving party.[4]

The legal standard applied to summary judgment motions does not change if the parties

file cross-motions for summary judgment.  Each party bears the burden of establishing the lack

of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  To meet this

standard, the moving party need not negate the claims of the opposing party; instead, the moving

party can simply point out the absence of evidence for the opposing party on an essential element

of that party's claim.[6]

If the movant carries this initial burden, the nonmovant that would bear the burden of

persuasion at trial may not simply rest on its pleadings but must instead "set forth specific facts"

that would be admissible in evidence in the event of trial from which a rational trier of fact could

find for the nonmovant.[7]  Sufficient evidence pertinent to the material issue "must be identified

---

[1] Fed. R. Civ. P. 56(a).

[2] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[3] *Anderson*, 477 U.S. at 248.

[4] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[5] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]  *Celotex*, 447 U.S. at 325.

[7] *Thom*, 353 F.3d at 851 (citing Fed. R. Civ. P. 56(e)).

by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[8]

## II.    Background

As an initial matter, the court notes plaintiff's response to defendants' summary judgment motion fails to controvert any of the facts defendants set forth.  Ordinarily, facts not specifically controverted by the party responding to a summary judgment motion will be deemed admitted.[9] In this case, however, plaintiff has also filed a summary judgment motion with a recitation of facts that, in some instances, find support in the record and properly controvert a number of facts set forth by defendants.  Accordingly, the court will only deem defendants' facts admitted to the extent they find support in the record and are not controverted by plaintiff's recitation of facts that find support in the record.  The court must also take up defendants' motion to strike portions of plaintiff's affidavit; however, for clarity, the court will address that motion after addressing the facts that give rise to this action.

Officer Larry J. Phillips testified that on July 27, 2008, he received a phone call from April Thompson, an Osage City resident known to Officer Phillips.  According to Officer Phillips, Ms. Thompson informed him she was standing at the side of her house when she heard a vehicle stop in front of her home for a matter of seconds or minutes.  Officer Phillips testified that Ms. Thompson told him the silver or gray car drove off when she walked to the front of her house.  Based on this report, Officer Phillips testified he intended to find the vehicle to perform a "public safety stop."  Detective Robert T. Dunham, who was coming on duty around the time

---

[8] *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

[9] D. Kan. R. 56.1(a); *see also Joshua W. v. Bd. of Educ. of Wichita Pub. Sch. U.S.D. No. 259*, 13 F. Supp. 2d 1199, 1205 n.6 (D. Kan. 1998) (stating that the moving party's facts "which are not admitted or denied will be deemed admitted").

Officer Phillips received the phone call, accompanied Officer Phillips to search for the vehicle.

What happened next is not entirely clear. At a minimum, it appears Ms. Thompson and her husband left their home in their vehicle in search of the car she had seen. At some point, the Thompsons found the vehicle believed to have been stopped in front of their home. The officers were also in the area at this time. Upon seeing them, Ms. Thompson either gestured to Officer Phillips or spoke to Officer Phillips in order to point out Mr. Fillmore's vehicle. The officers then pulled over Mr. Fillmore and approached his car.

Officer Phillips testified he asked for Mr. Fillmore's driver's license. Mr. Fillmore held up the license for a matter of seconds but did not hand it to Officer Phillips. According to Officer Phillips, he then asked Mr. Fillmore to show him the license again and hold it up long enough for Officer Phillips to take down the information on the license. Mr. Fillmore again held up the license but did not hand the license to Officer Phillips. The officers contend Mr. Fillmore did not display the license for a sufficient amount of time for Officer Phillips to copy the information contained on the license.

After Mr. Fillmore put down the license, Officer Phillips asked Mr. Fillmore to step out of his vehicle and walk to the back of the car. What happened next is disputed. Mr. Fillmore contends Officer Phillips asked him why he stopped in his car on 4th Street and stared at some child. Mr. Fillmore says he asked Officer Phillips if that was the only reason why he stopped him, and when Officer Phillips responded affirmatively, Mr. Fillmore said he was not going to answer any more questions. At that point, Mr. Fillmore says Officer Phillips informed him that he was under arrest. He contends Officer Phillips then asked him if he had any weapons. Mr. Fillmore says he told Officer Phillips he had a pocket knife clipped to his belt. According to Mr.

Fillmore's version of events, Officer Phillips patted down Mr. Fillmore and the officers removed the knife and wallet from Mr. Fillmore's person and then placed handcuffs on Mr. Fillmore.

The officers contend that after Officer Phillips asked Mr. Fillmore to exit the vehicle, he then inquired about whether Mr. Fillmore had any needles, knives, or weapons on him. They say Mr. Fillmore informed them he had a pocket knife and contend Detective Dunham directed Mr. Fillmore to place the knife on the car. When Mr. Fillmore failed to do so, the officers say they arrested him.

The officers testified they originally arrested Mr. Fillmore for obstruction in violation of K.S.A. 21-3808(a). They contend the knife taken from Mr. Fillmore had a blade that was in excess of four inches in length and was concealed, in violation of K.S.A. 21-4201(a). However, the officers were unsure at the time of the arrest whether Mr. Fillmore had violated the concealed weapons statute. They discovered Mr. Fillmore possessed a concealed weapons permit from Arizona when the officers were in the process of locating Mr. Fillmore's driver's license. Officer Phillips testified he did not know whether the permit would allow Mr. Fillmore to carry the weapon in Kansas. Mr. Fillmore was never prosecuted, and consequently, never convicted of any of the alleged offenses stemming from the incidents that occurred during the stop.

As previously mentioned, defendants have moved to strike Mr. Fillmore's affidavit, which he has attached in support of his summary judgment motion. Defendants argue paragraphs two through five of Mr. Fillmore's affidavit directly contradict his prior sworn deposition testimony and the facts pled in his complaint. They argue the affidavit is an attempt to create sham issues of fact in order to avoid summary judgment.

The court may disregard portions of an affidavit that conflict with prior sworn statements

5

if the court "concludes that the evidence is merely an attempt to create a sham fact issue."[10] When making this determination, the court considers the following factors: (1) whether the party was cross-examined during the prior testimony; (2) whether the party had access to relevant evidence at the time of the prior testimony, or whether the testimony presented in the affidavit was based on newly discovered evidence; (3) whether the prior testimony reflects confusion, which the affidavit attempts to clarify.[11]

The court need not apply this test, however, because the affidavit does not directly contradict Mr. Fillmore's prior sworn testimony or pleadings. Defendants point the court to a lengthy portion of the transcript from Mr. Fillmore's deposition, but they fail to explain with any precision how Mr. Fillmore's affidavit directly contradicts his prior testimony.[12] The only instance in which the affidavit arguably contradicts Mr. Fillmore's prior testimony could be the affidavit's statement regarding the length of time Mr. Fillmore contends he displayed his driver's license. His affidavit states he displayed the license for approximately ten seconds, but Mr. Fillmore gave deposition testimony that he displayed the license for about five or six seconds. Mr. Fillmore has consistently provided an approximation of the length of time he displayed his license. For example, his complaint estimates that he held it up for "about 5 to 10 seconds of view time."[13] The approximation in Mr. Fillmore's affidavit does not materially differ from his

---

[10] *Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1237 (D. Kan. 2007) (quoting *Martinez v. Barnhart*, 177 F. App'x 796, 800 (10th Cir. 2006)).

[11] *Id.* at 1238 (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

[12] *See Hinds v. Sprint/United Mgmt. Co.*, No. 05-2362-KHV, 2007 WL 99598, at *3 (D. Kan. Jan. 9, 2007) (noting plaintiff had failed to "explain how the affidavits supposedly contradict such [deposition] testimony" and denying a motion to strike).

[13] Compl. at ¶ 24, ECF No. 1.

prior accounts. Moreover, nothing presented in Mr. Fillmore's affidavit creates a material issue of fact. As explained below, the court's decision to deny summary judgment is based on whether undisputed evidence has been presented to establish that the officers had reasonable suspicion to stop Mr. Fillmore's vehicle, not the length of time he displayed his driver's license or whether Officer Phillips was able to copy down the information. For these reasons, defendants' motion to strike is denied.

### III. Discussion

#### A. Section 1983 Claim

Under 42 U.S.C. § 1983, a plaintiff may assert a claim for damages against another who, acting under the color of state law, deprived the plaintiff of a federal right.[14] To prevail in a § 1983 action, a plaintiff must prove the challenged conduct was attributable to a person acting under the color of state law and must prove the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.[15] In this case, Mr. Fillmore asserts Detective Dunham and Officer Phillips violated his rights under the Fourth and Fourteenth Amendments. Specifically, Mr. Fillmore alleges he was unreasonably seized when the officers stopped his vehicle and when they subsequently arrested him.

The Fourth Amendment protects individuals from unreasonable searches and seizures.[16] In a § 1983 action alleging a violation of Fourth Amendment rights, a plaintiff must show "both

---

[14] *Richardson v. McKnight*, 521 U.S. 399, 403 (1997).

[15] *Utah Animal Rights Coal. v. Salt Lake Cnty*, 566 F.3d 1236, 1242 (10th Cir. 2009).

[16] U.S. Const. Amend. IV.

that a 'seizure' occurred and that the seizure was 'unreasonable.'"[17] In this case, neither party disputes Mr. Fillmore was seized. Rather, the parties disagree about the reasonableness of the seizure. Mr. Fillmore has moved for summary judgment on the § 1983 claim, as have the officers. In addition to arguing they had reasonable suspicion to stop and detain Mr. Fillmore and probable cause to arrest him, the officers also contend they are entitled to summary judgment on the basis of qualified immunity. The court addresses each of these arguments in turn.

### 1. The Initial Stop

The officers contend the stop of Mr. Fillmore's vehicle was constitutionally proper on two grounds. First, they argue the stop was proper as a "public safety stop." Next, they argue the officers had reasonable suspicion criminal activity was afoot. Mr. Fillmore argues the officers lacked reasonable suspicion. All parties believe the court should decide as a matter of law whether the stop was constitutionally proper. The court rejects defendants' argument that the officers conducted a valid "public safety stop." However, material issues of fact preclude the court from deciding whether the officers had reasonable suspicion of criminal activity necessary to stop Mr. Fillmore's vehicle and conduct an investigative detention.

### a. Community Caretaking Functions / Public Safety Stop

The officers first argue the stop of Mr. Fillmore's vehicle was justified on the basis of the community caretaking doctrine. With regard to the community caretaking doctrine, both the Supreme Court and the Tenth Circuit have recognized that "[e]ncounters are initiated by the police for a wide variety of purposes, some of which are wholly unrelated to the desire to

---

[17] *Bradford v. Wiggins*, 516 F.3d 1189, 1196 (10th Cir. 2008) (citing *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000)); *see also Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).

prosecute for crime."[18]  These encounters, which relate to minimizing the likelihood of disorder, are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."[19]  Accordingly, a police officer exercising community caretaking functions may, in some circumstances, properly detain a person.[20]

The officers cite a handful of Kansas state appellate opinions addressing what they term a permissible "public safety stop."  This line of cases stands for the proposition that officers may, without violating the Fourth Amendment, stop a vehicle based on specific and articulable facts that constitute an adequate ground to believe the driver poses a danger to himself or others.[21]  As a community caretaking function, however, public safety stops "are not to be used for investigative purposes."[22]

In this case, the officers say they stopped Mr. Fillmore because they had a genuine concern for public safety and wanted to dispel any notions of a child predator in the area. However, community caretaking functions, including public safety stops, are separate and distinct from situations in which an officer suspects an individual has committed or is about to commit a crime.  The Tenth Circuit considered the community caretaking doctrine in *United States v. Garner*.  In that case, a law enforcement officer had received a report and had personally observed an individual lying in a field.  The Tenth Circuit concluded the officer was

---

[18] *United States v. Garner*, 416 F.3d 1208, 1212 (10th Cir. 2005) (quoting *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 13 (1968))).

[19] *Id.* (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)).

[20] *Id.* at 1212-13.

[21] *See State v. Vistuba*, 840 P.2d 511, 514 (Kan. 1992), *overruled on other grounds by State v. Field*, 847 P.2d 1280 (Kan. 1993).

[22] *State v. McCaddon*, 185 P.3d 309, 312 (Kan. Ct. App. 2008).

exercising a valid community caretaking function when he directed the individual to "come back and sit down" so that fire department personnel could examine him.[23]  Likewise, in *United States v. King*, the Tenth Circuit found that an officer engaged in a proper community caretaking function when the officer briefly detained a motorist to advise him of hazardous conditions and to direct him to stop honking his horn.[24]  In *State v. Vistuba*, the Kansas Supreme Court concluded that an officer did not violate the Fourth Amendment when he stopped a driver he suspected was falling asleep after the officer observed erratic driving.[25]

As Mr. Fillmore correctly points out, the factual scenarios presented in these opinions differ from the stop of his vehicle.  In this case, the officers admit they suspected criminal activity.  Therefore, the stop was not "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," as is required for a brief detention as part of a law enforcement officer's community caretaking functions.[26]  The officers' own summary judgment motion further bolsters this conclusion.  The officers argue that they were conducting a public safety stop *and* that they had reasonable suspicion of criminal activity.  Adopting defendants' position that the stop was a valid "public safety stop" amounts to lowering the standard necessary to detain an individual suspected of criminal activity.  As explained in greater detail below, it is well established that to detain an individual suspected of criminal activity, the officers must have reasonable suspicion supported by articulable facts that criminal

---

[23] *Garner*, 416 F.3d at 1212-15.

[24] *United States v. King*, 990 F.2d 1552, 1560-61 (10th Cir. 1993).

[25] *Vistuba*, 840 P.2d at 512.

[26] *Garner*, 416 F.3d at 1212 (quoting *Cady*, 413 U.S. at 441).

activity may be afoot. The officers may not simply invoke the community caretaking doctrine to justify an investigative detention when reasonable suspicion is lacking. For these reasons, the court finds the officers' stop of Mr. Fillmore's vehicle was not justified as part of the officers' community caretaking functions.

### b.  Reasonable Suspicion

The officers next argue the stop was a proper investigative detention as established by the Supreme Court decision in *Terry v. Ohio*.[27] An investigative detention is "a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause."[28] The constitutionality of an investigative detention depends on "whether the officer's action was justified at its inception, and whether [the stop] was reasonably related in scope to the circumstances which justified the interference in the first place."[29] Under *Terry*, an officer may conduct an investigative stop of an individual if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.[30] When determining whether an officer had reasonable suspicion, the court must "look at the totality of the circumstances to determine whether a particularized and objective basis, viewed from the standpoint of an objectively reasonable police officer, existed for suspecting legal wrongdoing."[31]

The officers argue they suspected possible criminal activity after receiving Ms.

---

[27] 392 U.S. 1 (1968).

[28] *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)).

[29] *Terry*, 392 U.S. at 19-20.

[30] *Id.*

[31] *United States v. Lopez*, 518 F.3d 790, 797 (10th Cir. 2008) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *see also Cortez*, 478 F.3d at 1123.

Thompson's report that an individual had been parked on a residential street watching a small child and had driven off after Ms. Thompson spotted him.[32] The record, however, does not indisputably establish that the officers knew this information when they stopped Mr. Fillmore's vehicle. For example, when asked in his deposition what Ms. Thompson had told him, Officer Phillips testified that Ms. Thompson had reported to him that she had heard a silver or gray car pull up in front of her house.[33] He said she told him that minutes or seconds later, she stepped around the side of her house to her front yard, and when she spotted the car, it drove away.[34] Mr. Fillmore, who examined Officer Phillips, asked, "Did she say anything else, I mean about any crimes or any kind of suspicious activity or anything?"[35] Officer Phillips responded by saying, "She just said the car creeped her out" but added that he did not ask her what she meant by that until after he had arrested Mr. Fillmore.[36]

A report of a vehicle lawfully stopped on a public street in front of a home for a matter of minutes or seconds would not, as a matter of law, lead a reasonable officer to conclude criminal activity may be under way. Under those circumstances, there is no objective indication of criminal activity, past, present, or future, and concerns about a potential child abduction amount to speculation.[37] Nevertheless, the record provides evidence that tends to indicate Officer

---

[32] *See* Mem. in Supp. of Summ. J. at 12, ECF No. 59.

[33] Phillips Dep. 7:10-8:14; 11:2-12, ECF No. 56-3.

[34] *Id.*

[35] *Id.* at 8:4-6.

[36] *Id.* at 8:7-16.

[37] *See, e.g., State v. McKeown*, 819 P.2d 644, 651 (Kan. 1991) (finding an officer lacked any reasonable or articulable suspicion to stop a vehicle parked on a public road after receiving a message from police dispatch regarding a report from a caller about a vehicle parked in a rural area).

Phillips possessed at least some additional information. More specifically, Mr. Fillmore testified that during the stop, Officer Phillips asked him if he was stopped on 4th Street watching a child or children.[38] During Officer Phillips' deposition, he was asked if he recalled telling Mr. Fillmore that he had received a report that the driver of the vehicle was looking at a child, and Officer Phillips answered affirmatively.[39] The record does not establish, however, that the officers knew prior to the time they stopped Mr. Fillmore that Ms. Thompson had reported that the individual in the vehicle called out to her child.

Because the court finds material facts are in dispute and because the record is sufficiently unclear, summary judgment on this issue is not appropriate. Plaintiff's statement of facts fails to address what the officers knew at the time they stopped him, and defendants' statement of facts obscures the timeline of events—what the officers knew and when. It is unclear what Officer Phillips knew at the time of Mr. Fillmore's stop, and therefore the court cannot find that either party is entitled to summary judgment on the issue of whether the officers violated Mr. Fillmore's Fourth Amendment rights because they lacked reasonable suspicion of criminal activity when they stopped his vehicle.

### 2. The Arrest

An arrest by law enforcement officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures and gives rise to a claim for false arrest under § 1983.[40] However, a "warrantless arrest by a law officer is

---

[38] Fillmore Dep. 24:13-24, ECF No. 59-1.

[39] Phillips Dep. 44:6-12, ECF No. 56-3.

[40] *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."[41]  "Probable cause to arrest exists when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."[42]  Probable cause does not demand that the officers possess knowledge of facts sufficient for a finding of guilt, but the standard requires "more than mere suspicion."[43]

In support of their summary judgment motion, the officers argue Mr. Fillmore violated two Kansas statutes: K.S.A. 8-244, which requires motorists to carry and display their driver's licenses upon demand, and K.S.A. 21-3808(a), which states, "Obstructing a legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of the court, or in the discharge of any official duty."[44]  However, according to the officers' own testimony, they initially arrested Mr. Fillmore for obstruction for allegedly failing to cooperate with Officer Phillips in the display of Mr. Fillmore's driver's license and for allegedly failing to follow the officers' instructions that Mr.

---

[41] *United States v. Turner*, 553 F.3d 1337, 1344 (10th Cir. 2009) (quotation and citations omitted).

[42] *United States v. Zamudio-Carillo*, 499 F.3d 1206, 1209 (10th Cir. 2007) (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)).

[43] *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998) (citing *United States v. Hansen*, 652 F.2d 1374, 1388 (10th Cir. 1981)).

[44]   In their summary judgment motion, the officers do not raise the charge of concealed possession of a knife, which the record shows was added after Mr. Fillmore was in custody.  They raise this issue only in their response opposing Mr. Fillmore's summary judgment motion.  Accordingly, the court will not address this alleged violation.

Fillmore remove a knife from his person.[45] The defendants point to nothing in the record showing the officers arrested Mr. Fillmore for a violation of K.S.A. 8-244, requiring the display of a driver's license. Both sides devote portions of their respective briefs to arguing about the length of time Mr. Fillmore displayed his license and whether it was a sufficient amount of time for Officer Phillips to take down the information. However, the issue is whether a reasonable officer would believe Mr. Fillmore committed an offense by displaying but not handing his license to Officer Phillips and by allegedly failing to remove a knife from his person. A reasonable jury could decide this issue either way.

Because the court already concluded genuine issues of material fact preclude the court from deciding the reasonableness of the initial stop, the court must also deny the officers' summary judgment motion on the issue of probable cause. If it is ultimately shown that defendants lacked reasonable suspicion to stop Mr. Fillmore's vehicle, a reasonable jury could conclude the officers lacked probable cause to arrest Mr. Fillmore for failing to comply with the officers' directives when Mr. Fillmore was not legally required to do so.[46]

---

[45] *See* Dunham Dep. 8:11-13, ECF No. 56-4 ("The decision was to charge you [Mr. Fillmore] with obstruction at that moment in time . . . "). Phillips Dep. 19:11-23, ECF No. 56-3 (stating that the officers arrested Mr. Fillmore for obstruction of legal process for failing to allow Officer Phillips to obtain Mr. Fillmore's driver's license information).

[46] *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217 (10th Cir. 2008) (noting that an arrest for concealing one's identity in violation of a New Mexico statute requires reasonable suspicion of some predicate, underlying crime); *see also Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177 (2004) (holding that a statute requiring a suspect to identify himself in the course of a *Terry* stop, *supported by reasonable suspicion*, did not violate the Fourth Amendment or the Fifth Amendment); *Brown v. Texas*, 443 U.S. 47 (1979) (holding that the application of a Texas statute criminalizing the failure to provide a name and address when lawfully stopped by police violated the petitioner's Fourth Amendment rights because, in that case, the officers lacked reasonable suspicion of criminal conduct and had stopped the petitioner only in order to ascertain his identity); *St. George v. State*, 197 S.W.3d 806, 819-20 (Tex. App. 2006) ("[E]ven when they have no basis for reasonable suspicion, officers may ask questions of passengers and request identification, as long as the police do not convey a message that compliance with their requests is required."), *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007); *State v. Latimer*, 687 P.2d 648, 651 (Kan. Ct. App. 1984) (construing K.S.A. 22-2402(1), which codifies *Terry* and allows officers to inquire as to a suspect's name, address, and an explanation of the suspect's actions and noting that although the officer had a right to demand the suspect's name during a *Terry* stop, the suspect "was under no legal duty to

Turning to Mr. Fillmore's summary judgment motion and viewing the facts in a light most favorable to the officers, the court also cannot conclude Mr. Fillmore is entitled to summary judgment on the issue of whether the officers had probable cause to arrest him. As previously stated, the validity of the initial stop will impact the determination as to whether the officers had probable cause to arrest Mr. Fillmore. Even assuming the stop was proper, there are disputed issues of fact regarding the length of time Mr. Fillmore displayed his license, when the officers placed Mr. Fillmore under arrest, and whether Mr. Fillmore failed to remove his pocket knife from his person after the officers allegedly directed him to do so.

If the officers had reasonable suspicion to stop Mr. Fillmore and Mr. Fillmore failed to follow their directives, a jury could reasonably conclude that the officers had probable cause to arrest Mr. Fillmore for obstruction. This is because Kansas courts broadly construe the obstruction statute. The Kansas Supreme Court has explained, "To obstruct means to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent."[47] Obstruction may include passive conduct "such as hindering or preventing an officer by not opening a door."[48] The Kansas Court of Appeals has indicated the obstruction statute is intentionally broad to cover actions that might not otherwise be unlawful but that hinder or obstruct officers in carrying out their duties.[49] Therefore, on this record, the court cannot say as a matter of law that the officers lacked probable cause to arrest Mr. Fillmore.

---

respond to the question posed by the officer.").

[47] *State v. Parker*, 690 P.2d 1353, 1361 (Kan. 1984).

[48] *Latimer*, 687 P.2d at 652.

[49] *Id.* (citing *Hudson v. State*, 218 S.E.2d 905, 907 (Ga. Ct. App. 1975)).

As the Tenth Circuit has directed, when the issue of probable cause arises in the context of a civil damages suit, it is a proper issue for the jury "if there is room for a difference of opinion."[50] In this case, a difference of opinion could exist as to whether the officers acted reasonably. If the initial stop is found to be unlawful, it is difficult to see how the officers would have probable cause to arrest Mr. Fillmore for failing to respond to the request for his driver's license and subsequent directives when the officers have failed to establish he was legally required to do so. Even if the initial stop was lawful, material issues of fact in dispute make it inappropriate for the court to rule, as a matter of law, whether there was probable cause to arrest Mr. Fillmore.

### 3.    Qualified Immunity

Defendants also argue that even if the court does not find the officers had reasonable suspicion to stop Mr. Fillmore's vehicle or probable cause to arrest him, the court should still grant summary judgment in their favor because they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[51] Qualified immunity leaves "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law."[52] The court reviews motions for summary judgment based on qualified

---

[50] *DeLoach v. Bevers*, 922 F.2d 618, 632 (10th Cir. 1990) (quoting *Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir. 1985)).

[51] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009)).

[52] *Anderson v. Creighton*, 483 U.S. 635, 638, 655 n.8 (1987).

immunity somewhat differently than other summary judgment motions.  When a defendant claims qualified immunity, to avoid summary judgment, a plaintiff must show: "(1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct."[53]  The court has discretion to address these subjects in any order.[54]  In evaluating a summary judgment motion on the basis of qualified immunity, the court must view the facts in the light most favorable to the party asserting the injury.[55]

As previously discussed, Mr. Fillmore has presented a viable Fourth Amendment claim. Accordingly, the court must determine whether the conduct Mr. Fillmore alleges would violate clearly established law.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[56]  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[57]

The Tenth Circuit has opined that it is "clearly established that a police officer cannot

---

[53] *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006)).

[54] *Pearson*, 229 S. Ct. at 821.

[55] *Scott v. Harris*, 550 U.S. 372, 377 (2007).

[56] *Stearns*, 615 F.3d at 1282.

[57] *Clark*, 625 F.3d at 690 (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)).

effect an investigative detention without reasonable suspicion[,]"[58] and "it is clearly established that an officer may not arrest an individual without a warrant unless there is probable cause."[59] Additionally, viewing the facts in a light most favorable to Mr. Fillmore, the court finds it would be clear to a reasonable officer that he lacked reasonable suspicion to stop Mr. Fillmore's vehicle based solely on an account of a vehicle lawfully stopped on a public street for a matter of minutes or seconds. In this scenario, there is no hint of criminal conduct to support such a detention. It would also be clear to a reasonable officer that he lacked probable cause to arrest Mr. Fillmore for failing to comply with the officers' directives during an investigative detention that was not justified at its inception. Viewing the facts in a light most favorable to the plaintiff, the court finds defendants are not entitled to summary judgment on the basis of qualified immunity at this stage based on the present record.

## IV.    False Arrest Claim

In addition to his 1983 claim, plaintiff also asserts a state law false arrest claim based on the same conduct. "'False arrest' is the restraint of the personal freedom of an individual without legal excuse by any words, acts, threats, or personal violence that under the circumstances the one being restrained fears to disregard."[60] Defendants first argue they are entitled to summary judgment on this claim because the officers had legal excuse to arrest Mr. Fillmore. Indeed, probable cause for making an arrest is a complete defense to an action for

---

[58] *Lundstrum v. Romero*, 616 F.3d 1108, 1125 (10th Cir. 2010).

[59] *Stearns*, 615 F.3d at 1282 (citing *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

[60] *Soto v. City of Bonner Springs*, 166 P.3d 1056, 1060 (Kan. Ct. App. 2007) (citing *Mendoza v. Reno Cnty.*, 681 P.2d 676, 678 (1984)).

unlawful arrest.[61]  However, the court has already concluded that genuine issues of material fact

preclude a finding that the officers had probable cause to arrest Mr. Fillmore.  Accordingly, this

argument fails.

Defendants next argue Mr. Fillmore's false arrest claim is barred by the discretionary

function exception contained in the Kansas Tort Claims Act (KTCA).  Under the KTCA,

"liability is the rule and immunity is the exception."[62]  The party asserting immunity under the

KTCA bears the burden of establishing it.[63]  The KTCA provides in pertinent part that,

> A governmental entity or an employee acting within the scope of the
> employee's employment shall not be liable for damages resulting
> from:
> . . .
> (e)    any claim based upon the exercise or performance or the
>        failure to exercise or perform a discretionary function or duty
>        on the part of a governmental entity or employee, whether or
>        not the discretion is abused and regardless of the level of
>        discretion involved.[64]

The KTCA does not define "discretionary function or duty."  Nevertheless, Kansas courts

have generally looked to the nature and quality of the discretion exercised.[65]  "The mere

application of any judgment is not the hallmark of the exception."[66]  Moreover, the Kansas

Supreme Court has "consistently recognized that where there is a 'clearly defined mandatory

---

[61] *Hill v. Day*, 215 P.2d 219, 224 (1950); *see also Price v. Cochran*, 205 F. Supp. 2d 1241, 1250 (D. Kan. 2002); PIK 127.22.

[62] *Soto v. City of Bonner Springs*, 238 P.3d 278, 282 (Kan. 2010).

[63] *Id.*

[64] K.S.A. 75-6104(e).

[65] *Soto*, 238 P.3d at 283.

[66] *Id.* (citing *Allen v. Kan. Dep't of S.R.S.*, 731 P.2d 314, 316 (Kan. 1987)).

duty or guideline, the discretionary function exception is not applicable.'"[67]

Defendants argue law enforcement officers possess discretion in determining the manner in which to carry out their duties or keep the peace, and therefore Mr. Fillmore's claim for false arrest is barred. Defendants are correct in noting that law enforcement officers' duties involve some measure of discretion. For example, the Kansas Supreme Court has held an instruction from a supervising officer to another officer to observe an intoxicated person falls within the discretionary function exception.[68] Likewise, when probable cause exists to believe an individual has committed a criminal offense, it is within the officer's discretion whether to execute an arrest.[69] Such action is shielded by the discretionary function exception.[70]

The discretionary function exception, however, does not provide blanket protections to actions that are unreasonable, arbitrary, or capricious.[71] It does not grant officers a discretionary right to violate established law.[72] It is well established that the Fourth Amendment's protection against unreasonable seizure requires officers to have probable cause before executing a

---

[67] *Id.* (citing *Nero v. Kan. State Univ.*, 861 P.2d 768, 781 (Kan. 1993)); *see also Hopkins v. State*, 702 P.2d 311, 318 (Kan. 1985) ("'Discretion' has been defined as the power and the privilege to act unhampered by legal rule.") (quoting Black's Law Dictionary 553 (4th ed. 1951)).

[68] *Woodruff v. City of Ottawa*, 951 P.2d 953, 959 (Kan. 1997).

[69] *Mendoza v. Reno Cnty.*, 681 P.2d 676, 678 (Kan. 1984) (finding that when the officers had probable cause, they could properly exercise their discretion to arrest, and therefore "the trial court properly held this action was a discretionary function immune from liability" but noting that the "legal status of a warrantless arrest without probable cause is outside the issues of this case.").

[70] *Id.*

[71] *Hopkins*, 702 P.2d at 319 ("The term 'discretion' imparts the exercise of judgment, wisdom and skill, distinguished from unthinking folly, heady violence and rash injustice.").

[72] *Dougan v. Rossville Drainage Dist.*, 757 P.2d 272, 279 (1988) (stating that a governmental agency does not have a discretionary right to violate a legal duty and avoid liability and noting, "To so hold would completely nullify the purpose of the Kansas Tort Claims Act").

warrantless arrest.[73]  If the officers lacked probable cause to arrest Mr. Fillmore—an open question based on this record—they did not have discretion to execute a warrantless arrest. Accordingly, defendants are not entitled to summary judgment on this basis.

Defendants also argue they are entitled to summary judgment on the false arrest claim because it is barred by other immunities.  K.S.A. 75-6104(i) provides that governmental entities and employees, acting within the scope of employment, shall not be liable for damages resulting from a claim that is limited or barred by any other law or immunity.  The court has already ruled that the officers are not entitled to qualified immunity on plaintiff's civil rights claim, and therefore this cannot provide the basis for immunity from the state law false arrest claim. However, defendants also argue that at Kansas common law, public officers are personally immune from liability for damages when performing duties imposed on them by statute and exercising good faith judgment and discretion.  Defendants cite *Kern v. Miller*, a 1975 Kansas Supreme Court opinion that predates the enactment of the KTCA.  In *Kern*, the court reaffirmed that as a general rule, "public officers, when performing the duties imposed upon them by statute and exercising in good faith the judgment and discretion necessary therefor, are not liable personally in damages for injuries to private individuals resulting as a consequence of their official acts."[74]  Although the undersigned is not convinced that *Kern* provides additional immunities not considered or included in the KTCA, the court need not reach this argument. The common law exception to liability would fail for the same reasons the discretionary function

---

[73] *Stearns*, 615 F.3d at 1282 (stating it is clearly established that an officer must have probable cause to support a warrantless arrest); *see also* K.S.A. 22-2401 (directing under what circumstances a law enforcement officer may make an arrest).

[74] *Kern v. Miller*, 533 P.2d 1244, 1248 (Kan. 1975) (citing *Tillotson v. Fair*, 159 P.2d 471, 474 (Kan. 1945) and *Gretsy v. Darby*, 68 P.2d 649, 651 (Kan. 1937)).

exception fails.  Plaintiff has presented sufficient evidence for a jury to find the officers arrested

him without probable cause.  Defendants have not carried their burden to show shown these

immunities would shield them from liability from damages resulting from such an act.

In their reply brief, defendants argue that because plaintiff failed to respond to their

immunity arguments concerning the false arrest claim, plaintiff has abandoned the claim.

Defendants cite two Tenth Circuit opinions in which the court concluded that a plaintiff's failure

to rebut arguments raised by defendants in a summary judgment motion was fatal to the

plaintiff's attempts to raise such an argument on appeal.[75]  Defendants also cite an opinion from

this court in which the court concluded that a defendant that failed to address plaintiff's

arguments for summary judgment on counterclaims in a breach of contract case effectively

abandoned the couterclaims.[76]  However, the plaintiff in this case is proceeding *pro se*, and

therefore the court liberally construes his arguments.[77]  Moreover, as previously stated, it is

defendants who bear the burden of establishing immunity under the KTCA.[78]  Plaintiff's failure

to address certain arguments does not establish that defendants are entitled to immunity.[79]  For

the foregoing reasons, the court denies defendants' motion for summary judgment on plaintiff's

false arrest claim.

---

[75] *See Hinsdale v. City of Liberal*, 19 F. App'x 749, 768-69 (10th Cir. 2001); *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992).

[76] *See Scotwood Indust. v. Frank Miller & Sons, Inc.*, 435 F. Supp. 2d 1160, 1171 (D. Kan. 2006).

[77] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[78] *Soto*, 238 P.3d at 282.

[79] *See generally Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (disagreeing with the practice of granting summary judgment motions as uncontested and requiring the district court to make the determination whether the moving party had demonstrated there were no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law).

Accordingly,

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (ECF

No. 53) is hereby denied.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (ECF No.

58) and defendants' motion to strike plaintiff's affidavit (ECF No. 57) are hereby denied.

**IT IS SO ORDERED.**

Dated this 25th day of March, 2011, at Topeka, Kansas.


<u>s/ K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge